Matthew S. Grimsley
Ohio Bar No. 0092942
(*pro hac vice motion forthcoming*)
Alanna Klein Fischer
Ohio Bar No. 0090986
*pro hac vice motion forthcoming*)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
alanna@lazzarolawfirm.com

Attorneys for Plaintiff and Putative Class Members

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **ALEXANDER BRUSALIS, on Behalf of Himself and All Others Similarly Situated,** <br><br> **Plaintiff,** <br><br> **V.** <br><br> **OS RESTAURANT SERVICES, LLC and BLOOMIN' BRANDS, INC.,** <br><br> **Defendants.** | CASE NO: _____ <br><br> **PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **(JURY TRIAL DEMANDED)** |

## SUMMARY

1. The case implicates Defendant OS Restaurant Services, LLC and Defendant Bloomin' Brands, Inc.'s (collectively "Defendants") violations of the Fair Labor Standards Act's ("FLSA") and the Arizona Minimum Wage Act's ("AMWA") tip credit and subsequent underpayment of their employees at the federally and state mandated minimum wage rate for Defendants' failure to pay Plaintiff and all similarly situated workers their

earned minimum wages.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. § 216(b).  Plaintiff also brings this case as a class action under Rule 23 of the Federal Rules of Civil Procedure for violations of the AMWA.

2. Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Arizona, under the AMWA. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

3. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. stating (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

4. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to its employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999)(for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D.

*Plaintiff's Original Collective and Class Action Complaint*

Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA or the Arizona tipped minimum wage). *See* 29 U.S.C. § 203(m). The AWA, A.R.S. § 23-350, et seq., establishes the law regarding the payment of wages in Arizona. Arizona law establishes a minimum wage within the State of Arizona and recognizes that, under certain circumstances, employers may impose a maximum tip credit on the wages of their tipped employees of up to three dollars ($3.00). The FLSA, in turn, requires that employers comply with any State law that establishes a higher minimum wage than that established by the FLSA. *See* 29 U.S.C. § 218(a). Therefore, federal law requires that all Arizona employers comply with the minimum wage standards set forth by Arizona law and limits the maximum allowable tip credit to three dollars ($3.00). *See Hanke v. Vinot Pinot Dining, LLC*, No. Civ. A. 2:15-cv-1873-SMM, Dkt. 51, at 4:6-11 (D. Ariz. Mar. 21, 2018) ("both the FLSA and AWA allow Arizona employers to take a maximum tip credit of $3.00 against their minimum wage obligations to 'tipped employees.'"); *see also Montijo v. Romulus, Inc.*, 2015 WL 1470128, at *5 n. 4 (D. Ariz. Mr. 30, 2015) (same).

6. Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017)(employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,'

but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7. Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [Plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8. Defendants violated the FLSA and the AWA in the following respects:

    a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet their minimum wage

obligations. In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendants, which reduced his wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cleaning ledges; cleaning the kitchen; cleaning walls and items hanging on the walls; cleaning window blinds, windows and window sills; cleaning the bathrooms; and/or washing trays, appliances, silverware, dishes and/or glasses.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week**: Plaintiff was required to spend greater than 20% of his time performing non-tip producing side work, including, but not limited to, cleaning and stocking the serving line; cleaning booths, chairs, high chairs and booster seats; cleaning menus; cleaning soft drink dispensers and nozzles; cleaning tables; filling and cleaning ketchup and syrup bottles; filling and cleaning salt and pepper shakers; replacing soft drink syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning and mopping floors; taking dishes and glasses from the tables to the kitchen; and/or taking out trash.

9. Therefore, Defendants did not pay Plaintiff and all similarly situated workers the applicable federal or Arizona minimum wage, in violation of 29 U.S.C. § 206 and A.R.S. § 23-363. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

## PARTIES AND PERSONAL JURISDICTION

12. Plaintiff Alexander Brusalis is an individual residing in Tucson, Arizona. His written consent to this action is attached hereto as Exhibit "A."

13. The FLSA Class Members are all current and former tipped employees who worked for Defendants at a Fleming's Prime Steakhouse & Wine Bar for at least one week during the three year period prior to the filing of this action to the present.

14. The Arizona Class Members are all current and former tipped employees who worked for Defendants at a Fleming's Prime Steakhouse & Wine Bar for at least one week in Arizona during the three year period prior to the filing of this action to the present.

15. The FLSA Class Members and the Arizona Class Members shall be collectively referred to as the "Class Members."

16. Defendant OS Restaurant Services, LLC, is a foreign limited liability company that conducts business in Arizona.

17. Defendant Bloomin' Brands, Inc. is a foreign corporation that conducts business in Arizona.

18. Defendant OS Restaurant Services, LLC is a wholly owned subsidiary of Defendant Bloomin Brands, Inc.

19. Together, Defendants conduct business under the trade name Fleming's Prime Steakhouse & Wine Bar.

20. Defendants may be served with process by serving their registered agent and/or authorized representative of service of process in the State of Arizona: Corporate Creations Network, 3260 N. Hayden Road, #210, Scottsdale, AZ 85251.

21. At all times relevant to this action, Defendants have had sufficient minimum contacts with the State of Arizona to confer personal jurisdiction. Defendants conducts business throughout Arizona, contracted with and employed Arizona residents, has Arizona customers, markets to residents of Arizona, and owns property in Arizona. Further, the wrongs complained of in this Complaint occurred in Arizona.

## COVERAGE

22. At all material times, Defendants have been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

23. At all material times, Defendants were enterprises within the meaning of 29 U.S.C. § 203(r).

24. At all material times, Defendants were enterprises in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

25. At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

26. Upon information and belief, at all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1). Upon information and belief, Defendants perform related activities through unified operation and common control for a common business purpose, and part of their unified business model is the wage violations alleged in this Complaint.

27. At all material times, Plaintiff and the Class Members were employees engaged in the commerce or the production of goods for commerce.

28. At all material times, Plaintiff and the Class Members were employees of Defendants as defined by A.R.S. § 23-350(2) and A.R.S. § 23-362.

29. At all material times, Defendants were and continues to be "employers" as defined by A.R.S. § 23-350(3) and A.R.S. § 23-362.

## FACTS

30. Defendants operate a nationwide chain of restaurants under the trade name "Fleming's Prime Steakhouse & Wine Bar" ("Fleming's") throughout the U.S., including in Arizona.

31. The Fleming's restaurants are full-service restaurants that employ waiters and bartenders to provide services to customers.

32. A waiter gathers orders from customers and delivers food and drinks to the customers.

33. A bartender makes various alcoholic beverages to customers.

34. Defendants pay their waiters and bartenders less than the minimum wage under state and federal law.

35. Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their waiters and bartenders, including the Plaintiff and Class Members.

36. Plaintiff worked for Defendants at the Fleming's location in Scottsdale, Arizona. He worked as a server and was paid less than the minimum wage allowed under Arizona and federal law. He worked for Defendants from approximately February 14, 2018 through June 1, 2021.

37. The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 11, 2021). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (emphasis in original)

38. Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer how seeks to utilize the trip credit to meet their minimum wage obligations.

39. In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

40. Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations

while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

41. These duties include but are not limited to the following: cleaning ledges; cleaning the kitchen; cleaning walls and items hanging on the walls; cleaning window blinds, windows, and window sills; cleaning the bathrooms; and/or washing trays, appliances, silverware, dishes and/or glasses, amongst other activities, that were not related to their tipped duties.

42. Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

43. Specifically, Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to, cleaning and stocking the serving line; cleaning booths, chairs, high chairs, and booster seats; cleaning menus; cleaning soft drink dispensers and nozzles; cleaning tables; filling and cleaning ketchup and syrup bottles; filling and cleaning salt and pepper shakers; replacing soft drink syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning, and mopping floors; taking dishes and glasses from the tables to the kitchen; and/or taking out trash.

44. Further, Defendants required Plaintiff and the Class Members to perform non-tipped producing work prior to the opening of the restaurant and after the restaurant closed. Indeed, Defendants required the Plaintiff and Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendants required the Plaintiff and Class Members to remain at the restaurant after it had closed for business and there was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they spent 31 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tipped producing work.

45. However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiff and the Class Members to perform were duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

46. During Plaintiff's and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

47. When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

48. Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

49. Defendants did not track or record the amount of time their tipped employees spent performing non-tipped work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff.

50. Defendants use a point-of-sale system to record hours worked by their tipped employees. Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff and the Class Members.

51. In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

52. However, Defendants did not allow their waiters and bartenders to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

53. Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

54. Moreover, Defendants violated the law by not even paying the minimum "tipped" hourly rate. Defendants required their tipped employees to pay for items for their uniform, including shirts, pants, and shoes. These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

55. Because Defendants paid their tipped employees at the minimum of $2.13 per hour (or the state's respective tipped wage), any week in which a tipped employee was required to pay for work related expenses for Defendants' business, their compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

56. In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced by the amount of these uniform costs. As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

57. Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

58. As such, Plaintiff and the Class Members were not compensated at the federally mandated minimum wage or Arizona minimum wage rate.

59. Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding their tipped employees. Defendants' method of paying Plaintiff was not based on a good faith and reasonable belief that their conduct complied with the law.

## REVISED FIELD OPERATIONS HANDBOOK
## AND PROPOSED DUAL JOBS REGULATION

60.  On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time. However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); Cope v. Let's Eat Out, Inc., 354 F. Supp. 3d 976 (W.D. Miss. 2019).

61.  Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).

62.  After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

63.  After delaying the effective date of the Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

64.  After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

65.  Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That

is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

66. Here, Defendants illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time. That is because Defendants required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, or after they were closed, when the restaurants did not have customers and there was no opportunity to earn tips. During this time, Defendants paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

67. Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendants.

## COLLECTIVE ACTION ALLEGATIONS

68. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.

69. Plaintiff has actual knowledge, through conversations with his co-workers that a class of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

70. The Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

71. Like Plaintiff, the Class Members were not given proper notice of the tip credit provisions, were required to perform substantial work that was unrelated to their tip producing duties, and were required to incur the same work related expenses.

72. Like Plaintiff, the Class Members performed similar duties and were paid under the same pay system.

73. Plaintiff and the Class Members all labored under the same corporate structure, the same corporate policies, the same corporate chain of command, and pursuant to the rules in the same company handbook.

74. The names and address of the Class Members of the collective action are available from Defendants' records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

75. Although the exact amount of damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

76. As such, the class of similarly situated Class Members is properly defined as follows:

> **All current and former tipped employees who worked for Defendants at a Fleming's Prime Steakhouse & Wine Bar for at least one week during the three-year period prior to the filing of this action to the present.**

## ARIZONA CLASS ALLEGATIONS

77. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Arizona Class Members which is comprised of the following:

> **All current and former tipped employees who worked for Defendants at a Fleming's Prime Steakhouse & Wine Bar for at least one week in Arizona during the three-year period prior to the filing of this action to the present.**

78. <u>Numerosity</u>. The number of members in the Arizona Class is believed to exceed forty. This volume makes bringing the claims of each individual member of the Arizona Class before this Court impracticable. Likewise, joining each individual member

of the Arizona Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Arizona Class will be determined from Defendant's records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Arizona Class and Defendant.

79. <u>Typicality</u>.  Plaintiff's claims are typical of the Arizona Class because like the members of the Arizona Class, he was subject to Defendant's uniform policies and practices and were compensated in the same manner as others in the Arizona Class.  Plaintiff's and the Arizona Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Arizona law.  As such, Plaintiff's claims are typical of the claims of the Arizona Class.  Plaintiff and all members of the Arizona Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of law as alleged herein.

80. <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Arizona Class because it is in his interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Arizona Class he seeks to represent.

81. <u>Commonality</u>.  Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

    a. Whether Defendants properly informed Plaintiff and the Arizona Class Members of their intent to claim the tip credit;

    b. Whether more than 20% of the work performed by Plaintiff and the Arizona Class Members was non-tip generating work;

    c. Whether Plaintiff and the Arizona Class Members were required to perform more than 30 minutes of contemporaneous non-tip producing work; and

        d. Whether Plaintiff and the Arizona Class Members were subject to unlawful expense practices.

82. The common issues of law include, but are not limited to;

        a. Whether Defendants can claim the "tip credit";

        b. Whether Defendants violated the Arizona Minimum Wage Act;

        c. Whether Plaintiff and the Arizona Class are entitled to compensatory damages;

        d. The proper measure of damages sustained by Plaintiff and the Arizona Class Members; and

        e. Whether Defendants' actions were "willful."

83. <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Arizona Class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits.  Prosecution of separate actions by individual members of the Arizona Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

84. A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Arizona Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  Notice of the pendency and any resolution of this action can be provided to the Arizona Class by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication.  The identity of members of the Arizona Class is readily identifiable from Defendants' records.

85. This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; and (2) the burden is on Defendants to prove it properly compensated their employees including any potential exemptions that might apply. Ultimately, a class action is a superior form to resolve the Arizona claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Arizona Class Members per applicable Arizona laws.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS

### FAILURE TO PAY THE MINIMUM WAGE

86. Plaintiff incorporates the preceding paragraphs by reference.

87. This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

88. Plaintiff and the Class Members were paid hourly rates less than the minimum wage while working for Defendants.

89. Plaintiff and the Class Members were not exempt from the minimum wage requirements of the FLSA.

90. Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the federal minimum wage rate. Defendants' violation of the FLSA were willful.

91. Defendants' practice of failing to inform their employees of their intent to rely on the tip credit to meets their minimum wage obligations violates the FLSA.

92. Defendants' failure to pay the minimum wage to Plaintiff and the Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. To foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA. 29 U.S.C. § 255(a).

## COUNT II

### VIOLATION OF THE ARIZONA MINIMUM WAGE ACT

### FAILURE TO PAY THE MINIMUM WAGE

93. Plaintiff incorporates the preceding paragraphs by reference.

94. This count arises from Defendants' violation of the Arizona Minimum Wage Act in connection with their failure to pay the minimum wages. *See* A.R.S. § 23-363.

95. Plaintiff and the Class Members were paid hourly rates less than the Arizona minimum wage while working for Defendants. *See* Arizona Administrative Code R20-5-1207 and A.R.S. Title 23.

96. Plaintiff and the Class Members were not exempt from the minimum wage requirements under Arizona law.

97. Defendants' failure to comply with the minimum wage requirements of Arizona law, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the Arizona minimum wage rate. Defendants' violation of the Arizona law was willful.

98. Defendants' practice of failing to inform their employees of their intent to rely on the tip credit to meets their minimum wage obligations violates Arizona law.

99. Defendants' failure to pay the minimum wage to Plaintiff and the Class Members, in violation of Arizona law was willful and not based on a good faith belief that their conduct did not violate Arizona law.

### **WAGE DAMAGES SOUGHT**

100. Plaintiff and the Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

101. Plaintiff and the Class Members are entitled to reimbursement for all work-related expenses they paid.

102. Plaintiff and the Class Members are entitled to liquidated damages.

103. Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs.

## JURY DEMAND

104. Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

105. For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding him and the Class Members:

   a. Minimum wage compensation unadulterated by the tip credit;
   b. Liquidated damages;
   c. All misappropriated funds including all tips, expenses, and wages wrongfully withheld;
   d. An order requiring Defendants to correct their pay practices going forward;
   e. Reasonable attorney's fees, costs, and expenses of this action;
   f. Pre and post judgment interest; and
   g. Such other and further relief to which Plaintiff and the Class Members may be entitled, both in law and in equity.

Dated November 19, 2021.

RESPECTFULLY SUBMITTED BY

By: */s/ Matthew S. Grimsley*_____
Matthew S. Grimsley
Ohio Bar No. 0092942
(*pro hac vice motion forthcoming*)
Alanna Klein Fischer
Ohio Bar No. 0090986
(*pro hac vice motion forthcoming*)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
alanna@lazzarolawfirm.com
Attorneys for Plaintiff