William M. Hogg (*Pro Hac Vice*)
HODGES & FOTY, LLP
4409 Montrose Boulevard, Suite 200
Houston, Texas 77006
Tel: (713) 523-0001; Fax: (713) 523-1116
whogg@hftrialfirm.com

Matthew S. Grimsley (*Pro Hac Vice*)
Alanne Klein Fischer (*Pro Hac Vice*)
THE LAZZARO LAW FIRM, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Tel: (216) 696-5000; Fax: (216) 696-7005
matthew@lazzarolawfirm.com
alanna@lazzarolawfirm.com

*Attorneys for Plaintiff and Class Members*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| Alexander Brusalis, on Behalf of Himself and All Others Similarly Situated, | **Case No. CV-21-1980-PHX-SRB** |
| Plaintiffs, | **PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |
| vs. | **(JURY TRIAL DEMANDED)** |
| OS Restaurant Services, LLC, | Judge: The Honorable Susan R. Bolton |
| Defendant. | |

1

## SUMMARY

2       1.      The case implicates Defendant OS Restaurant Services, LLC's ("Defendant" or

3  "Fleming's") violations of the Arizona Minimum Wage Act's ("AMWA") tip credit and

4  subsequent underpayment of their employees at the state mandated minimum wage rate for

5  Defendant's failure to pay Plaintiff and all similarly situated workers their earned minimum

6  wages. Plaintiff brings this case as a class action under Federal Rule of Civil Procedure 23 for

7  violations of the AMWA.

8       2.      Defendant pays its tipped employees, including servers and bartenders, below

9  the minimum wage rate by taking advantage of the tip-credit provisions of the AMWA. Under

10 the tip-credit provisions, an employer of tipped employees may, under certain circumstances,

11 pay those employees less than the minimum wage rate by taking a "tip credit" against the

12 employer's minimum wage obligations from the tips received from customers.

13      3.      The AMWA, A.R.S. § 23-350, *et seq.*, establishes the law regarding the payment

14 of wages in Arizona. Arizona law establishes a minimum wage within the State of Arizona

15 and recognizes that, under certain circumstances, employers may impose a maximum tip credit

16 on the wages of their tipped employees of up to three dollars ($3.00). However, there are strict

17 requirements for an employer to utilize the "tip credit." For example, in order for employers

18 to pay tipped employees a maximum of $3.00 per hour less than non-tipped employees, the

19 tipped employees must earn at least minimum wage for all hours worked each week when tips

20 are included. If an employer elects to utilize this tip credit provision, the employer must:

21          a.  Provide written notice to each employee prior to exercising the tip credit, and

22              thereafter notify the employee in writing each pay period of the amount per hour

23              that the employer takes a tip credit;

24          b.  Be able to show that the employee received at least the minimum wage when

25              direct wages and the tip credit are combined; and

26

27

28

c. Permit the tipped employee to retain all tips, whether or not the employer elects to take a tip credit for tips received, except to the extent the employee participates in a valid tip pooling arrangement.

4. Moreover, the tip credit is available only for hours an employee works in the tipped occupation. Where a tipped employee is routinely assigned to duties associated with a non-tipped occupation, such as maintenance or general preparation work, no tip credit may be taken for the hours worked in performing such duties.

5. Defendant violated the AMWA in the following respects:

a. **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. Defendant failed to properly inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for tipped employees:** Plaintiff was required to purchase certain clothing to work for Defendant, which reduced his wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including but not limited to, cleaning ledges; cleaning window blinds, windows and window sills; cleaning the bathrooms; and/or washing trays, appliances, silverware, dishes, and/or glasses.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:** Plaintiff was required to spend greater than 20% of his time performing non-tip producing side work, including but not limited to, cleaning and stocking the serving line; cleaning booths, chairs, high chairs and booster seats; cleaning tables; filling and cleaning ketchup and syrup bottles; filling and cleaning salt and pepper shakers; replacing soft drink syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning, and mopping floors; taking dishes and glasses from the tables to the kitchen; and/or taking out the trash.

6.  Therefore, Defendant did not pay Plaintiff and all similarly situated worked the applicable Arizona minimum wage in violation of A.R.S. § 23-363. As a result of these violations, Defendant has lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, for all hours worked. In other words, Defendant must account for the difference between the wages paid to Plaintiff and the Class Members, and the full minimum wage rate under Arizona law.

## SUBJECT MATTER JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Under CAFA, this Court has original jurisdiction over Plaintiff's Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and Defendant are citizens of different states. Moreover, the number of proposed class members in Arizona is believed to exceed 100.

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this claim occurred in this district, including many of the wrongs herein alleged.

///

///

**PARTIES AND PERSONAL JURISDICTION**

9.      Plaintiff Alexander Brusalis is an individual residing in Tucson, Arizona. At all relevant times, Plaintiff Brusalis was and is a citizen of the State of Arizona.

10.     The "Class Members" are all current and former tipped employees who worked for Defendant at a Fleming's Prime Steakhouse & Wine Bar for at least one week in Arizona at any time from November 19, 2018 until final resolution of this Action.

11.     Defendant OS Restaurant Services, LLC is a Florida limited liability company with its primary place of business located in Florida, and conducts business in Florida. Accordingly, OS Restaurant Services, LLC is a citizen of the State of Florida. Defendant OS Restaurant Services, LLC has appeared in this matter and may be served with process of service through its known counsel of record.

12.     At all times relevant to this action, Defendant has had sufficient minimum contacts with the State of Arizona to confer personal jurisdiction. Defendant conducts business throughout Arizona, contracts with and employs Arizona residents, had Arizona customers, markets to residents of Arizona, and owns property in Arizona. Further, the wrongs complained of in this Complaint occurred in Arizona.

13.     At all material times, Plaintiff and Class Members are and were employees of Defendant as defined by A.R.S. § 23-350(2) and A.R.S. § 23-362.

14.     At all material times, Defendant was and continues to be an "employer" as defined by A.R.S. § 23-350(3) and A.R.S. § 23-362.

**FACTS**

15.     Defendant operates a chain of restaurants under the trade name "Fleming's Prime Steakhouse & Wine Bar" throughout the United States, including in Arizona.

16.     The Fleming's restaurants are full-service restaurants that employ waiters and bartenders to provide services to customers.

17.     A waiter gathers orders from customers and delivers food and drinks to the customers.

18.     A bartender makes various alcoholic beverages for customers.

19.     Defendant pays its waiters and bartenders less than the minimum wage under Arizona law.

20.     Defendant attempted to and attempts to utilize the tip credit to meet its minimum wage obligations to its waiters and bartenders, including Plaintiff and Class Members.

21.     Plaintiff worked for Defendant at the Fleming's location in Scottsdale, Arizona. He worked as a server and was paid less than the minimum wage allowed under Arizona law. He worked for Defendant from approximately February 14, 2018 through June 1, 2021.

22.     The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit.[1] The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushing to recoup the costs of free, exploited labor.[2]

23.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to meet its minimum wage obligations.

24.     In this case, Defendant did not satisfy the requirements to use the tip credit. Defendant maintained a policy and practice whereby it failed to, provide Plaintiff and Class

---

[1]  *See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/ (last visited Apr. 21, 2022)

[2]  *Id.* (emphasis in original).

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND
*Brusalis, et al. v. OS Restaurant Services LLC*, Case No. CV-21-1980-PHX-SRB

Members with proper notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

25.     Defendant also maintains a policy and practice whereby tipped employees are required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and Class Members were engaged in dual occupations while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

26.     These duties include but are not limited to the following: cleaning ledges; cleaning the kitchen; cleaning walls and items hanging on the walls; cleaning window blinds, windows, and window sills; cleaning the bathrooms; and/or washing trays, appliances, silverware, dishes and/or glasses, amongst other activities that were not related to their tipped duties.

27.     Defendant also maintains a policy and practice whereby tipped employees are required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work unrelated to the employees' tipped occupation.

28.     Specifically, Defendant maintains a policy and practice whereby tipped employees were and are required to spend a substantial amount of time performing non-tip producing side work, including but not limited to: cleaning and stocking the serving line; cleaning booths, chairs, high chairs, and booster seats; cleaning menus; cleaning soft drink dispensers and nozzles; cleaning tables; filling and cleaning ketchup and syrup bottles; filling and cleaning salt and pepper shakers; replacing soft drank syrups; rolling silverware; setting tables; stocking ice; sweeping, cleaning, and mopping floors; taking dishes and glasses from the tables to the kitchen; and/or taking out trash.

29.     Further, Defendant requires Plaintiff and Class Members to perform non-tipped producing work prior to the restaurants opening to the public and after the restaurants closed to the public. Indeed, Defendant requires Plaintiff and Class Members to arrive prior to the restaurants opening for business when there are no customers in the building and therefore no opportunity to earn tips, to perform manual labor cleaning and setup duties. Likewise, Defendant requires Plaintiff and Class Members to remain at the restaurants after they close for business, after all the customers have left, and therefore when there is no opportunity to earn tips, to perform manual labor cleaning duties. At times, Plaintiff and Class Members spend approximately 31 minutes to two hours performing such work before the restaurants open and the same amount of time after the restaurants close performing non-tip producing work.

30.     However, Defendant does not pay its tipped employees the full minimum wage rate for this work. The duties that Defendant requires Plaintiff and Class Members to perform are duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

31.     During Plaintiff's and Class Members' employment, checklists were posted in Defendant's restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

32.     When the tipped employees perform these non-tipped duties, they usually do no interact with customers and do not have an opportunity to earn tips.

33.     Indeed, Defendant does not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

34.     Defendant does not track or record the amount of time its tipped employees spend performing non-tipped work, even though Defendant is capable of doing so. Defendant's timekeeping system is capable of tracking multiple job codes for different work assignments, but Defendant fails to track to the specific tasks for Plaintiff and Class Members.

35.     Defendant uses a point-of-sale ("POS") system to record hours worked by its tipped employees. Defendant then analyzes the information collected by this system, including the labor costs at each of the restaurants. Defendant's timekeeping system is capable of tracking multiple job codes for different work assignments, but Defendant fails to track to the specific tasks for Plaintiff and Class Members.

36.     In the POS system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

37.     However, Defendant does not allow its waiters and bartenders to clock-in at the full minimum wage rate when performing non-tipped work described in this Complaint.

38.     Defendant's managers at the Fleming's restaurants are and were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which creates an incentive to keep the amount paid to tipped employees low.

39.     Moreover, Defendant violate the law by not even paying the minimum "tipped" hourly rate. Defendant requires its tipped employees to pay for specific types of clothing items to meet Defendant's "uniform" standards, including shirts, pants, and shoes. These clothing items are required to perform work for Defendant and are primarily for the benefit and convenience of Defendant. The costs for these items are not, and were not, reimbursed by Defendant.

40.     Because Defendant pays its tipped employees at $3.00 below Arizona's minimum wage rate, any week in which a tipped employee was required to pay for work-related expenses for Defendant's business, their compensation fell below the requisite hourly rate, thereby negating Defendant's entitlement to claim the tip credit.

41.     In other words, by requiring Plaintiff and Class Members to pay for these work-related expenses without reimbursement, their hourly rates of pay were reduced by the amount of these uniform costs. As a result, they were not even paid the minimum hourly rate necessary for Defendant to claim the tip credit.

42.     Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward its minimum wage obligation to Plaintiff and Class Members.

43.     As such, Plaintiff and Class Members are not, and were not, compensated at the mandated Arizona minimum wage rate.

44.     Defendant knew or should have known that its policies and practices violates the law, and Defendant ahs not made a good faith effort to comply with the AMWA. Rather, Defendant knowingly, willfully, and/or with reckless disregard of the law carried and continues to carry out the illegal pattern and practice regarding its tipped employees. Defendant's method of paying Plaintiff was not based on a good faith and reasonable belief that its conduct complied with the law.

## U.S. DEPARTMENT OF LABOR REVISED FIELD OPERATIONS HANDBOOK AND PROPOSED DUAL JOBS REGULATION

45.     Arizona courts will look to interpretation of federal law, such as the Fair Labor Standards Act ("FLSA"), for guidance in implementing Arizona laws where the laws are consistent and/or similar. *See Hockersmith v. City of Patagonia*, 123 Ariz. 559, 561, 601 P.2d 322 (App. 1979) (while not holding that federal law was controlling, the court's analysis relied on cases that decided whether an activity was compensable under the FLSA). Moreover, Arizona law must be read in such a manner that is consistent with federal law, including the FLSA. *See US W. Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 201 Ariz. 242, 246 (2001) (stating that whenever possible, the court construes Arizona law "to avoid conflict with the United States Constitution and federal statutes"). Accordingly, while not binding or controlling on issues of Arizona law, federal guidelines and regulations on the tip credit are helpful where case law is lacking in interpreting Arizona's state-law tip credit requirements.

46.     On November 8, 2018, the United States Department of Labor issued opinion letter FLSA2018-27, which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time. However, nearly every court to have considered that opinion letter held that the opinion letter was not entitled to any

deference. *See Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019); *Callaway v. DenOne, LLC*, No. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019); *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019).

47.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019.[3]

48.     After soliciting comments, the Department of Labor published its final rule on December 20, 2020, which had an effective date of March 1, 2021.[4] After delaying the effective date of the Final Rule,[5] on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit."[6]

49.     After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule).[7]

50.     Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worked performed non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

51.     Here, Defendant requires Plaintiff and Class Members to perform non-tip producing work for an excessive period of time. That is because Defendant requires Plaintiff and Class Members to perform non-tipped work for 31 minutes to two hours before the restaurants are open to the public for business, throughout their shifts, and/or after the

---

[3]     *See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa (last visited Apr. 21, 2022).
[4]     *See* https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa (last visited Apr. 21, 2022).
[5]     *See* https://www.dol.gov/agencies/whd/flsa/tips (last visited Apr. 21, 2022).
[6]     *See* https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal (last visited Apr. 21, 2022).
[7]     *See* https://www.dol.gov/agencis/whd/flsa/tips (last visited Apr. 21, 2022).

1  restaurants are closed to the public when the restaurants do not have customers and there are

2  no opportunities to earn tips. During this time, Defendant pays below the minimum wage rate

3  and forces Plaintiff and Class Members to perform non-tip producing duties, as noted above.

4       52.    Given that Defendant fails to comply with the requirements to take the tip credit,

5  Defendant has lost the ability to claim the tip credit and owes Plaintiff and Class Members pay

6  at the full minimum wage rate per hour for all hours they worked for Defendant.

7  **RULE 23 CLASS ACTION ALLEGATIONS**

8       53.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

9  Procedure 23 on behalf of the Class Members, which is comprised of the following:

10
11         **All current and former tipped employees who worked for Defendant at a Fleming's Prime Steakhouse & Wine Bar for at least one week in Arizona at any time from November 11, 2018 through final resolution of this Action.**

12       54.    <u>Numerosity</u>.  The number of members in the Class is believed to exceed one

13  hundred. This volume makes bringing the claims of each individual member of the Class

14  before this Court impracticable. Likewise, joining each individual member of the Class as a

15  plaintiff in this action is impracticable. Furthermore, the identity of the Class Members will be

16  determined from Defendant's records, as will the compensation paid to each of them. As such,

17  a class action is a reasonable and practical means of resolving these claims. To require

18  individual actions would prejudice the Class Members and Defendant.

19       55.    <u>Typicality</u>.  Plaintiff's claims are typical of the Class because, like the Class

20  Members, Plaintiff was subject to Defendant's uniform policies and practices and was

21  compensated in the same manner as others in the Class. Plaintiff and Class Members have

22  been uncompensated and/or under-compensated as a result of Defendant's common policies

23  and practices which failed to comply with Arizona law. As such, Plaintiff's claims are typical

24  of the claims of the Class. Plaintiff and all members of the Class sustained damages arising

25  out of and caused by Defendant's common course of conduct in violation of the law as alleged

26  herein.

27
28

56.   <u>Adequacy</u>.   Plaintiff is a representative party who will fairly and adequately protect the interests of the Class because it is in his direct interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law. Plaintiff has retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Class Members he seeks to represent.

57.   <u>Commonality</u>.   Common issues of law and fact predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

    a.   Whether Defendant properly informed and continued to inform Plaintiff and Class Members of its intent to claim the tip credit;

    b.   Whether more than 20% of the work performed by Plaintiff and Class Members was non-tip generating work;

    c.   Whether Plaintiff and Class Members were required to perform more than 30 minutes of contemporaneous non-tip producing work; and

    d.   Whether Plaintiff and Class Members are subject to unlawful expense practices.

58.   The common issues of law include, but are not limited to:

    a.   Whether Defendant can claim the "tip credit";

    b.   Whether Defendant violates the AMWA;

    c.   Whether Plaintiff and Class Members are entitled to compensatory damages;

    d.   Whether Plaintiff and Class Members are entitled to additional statutory damages;

    e.   The proper measure of damages sustained by Plaintiff and Class Members; and

    f.   Whether Defendant's actions were "willful."

59.   <u>Superiority</u>.   A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Defendant, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all

parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendant.

60.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the Class Members is readily identifiable from Defendant's records.

61.    This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or procedures were uniform; and (2) the burden is on Defendant to prove it properly compensated its employees including any potential exemptions that might apply. Ultimately, a class action is a superior form to resolve the claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendant to pay Plaintiff and Class Members per applicable Arizona laws and regulations.

## CAUSES OF ACTION

### COUNT I
### Violation of the Arizona Minimum Wage Act
### Failure to Pay the Minimum Wage
### (On Behalf of Plaintiff and Class Members)

62.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

63.    This count arises from Defendant's violation of the AMWA in connection with its failure to pay the minimum wages. *See* A.R.S. § 23-363.

64.    Plaintiff and Class Members were paid hourly rates less than the Arizona minimum wage while working for Defendant. *See* A.A.C. § R20-5-1207 and A.R.S. Title 23.

65.     Plaintiff and Class Members are not, and were not, exempt from the minimum wage requirements under Arizona law.

66.     Defendant's failure to comply with Arizona's minimum wage requirements, and, in particular, the tip credit requirements, resulted in Plaintiff and Class Members being paid less than the Arizona minimum wage rate. Defendant's violation of the AMWA was willful.

67.     Defendant's practice of failing to properly inform (and continue to inform) its tipped employees of Defendant's intent to rely on the tip credit to meet its minimum wage obligations violates Arizona law.

68.     Moreover, Defendant's requirement that Plaintiff and Class Members perform substantial and/or excessive non-tip producing work while paying them at the tip credit wage rate violates Arizona law.

69.     Defendant's failure to pay the minimum wage to Plaintiff and Class Members, in violation of Arizona law, was willful and not based on a good faith belief that its conduct did not violate Arizona law.

## **WAGE DAMAGES SOUGHT**

70.     Plaintiff and Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked within the relevant time period.

71.     Plaintiff and Class Members are entitled to reimbursement for all work-related expenses they paid.

72.     Plaintiff and Class Members are entitled to treble damages pursuant to A.R.S. § 23-355, as well as any other statutory damages provided by Arizona law;

73.     Plaintiff and Class Members are also entitled to recover their attorneys' fees and costs.

## **JURY DEMAND**

74.     Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and Fed. R. Civ. P. 38(a), Plaintiff hereby demands a trial by jury.

**<u>PRAYER FOR RELIEF</u>**

75.    For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding him and the Class Members, and requests the following relief:

a.   An order certifying that the Cause of Action in this Complaint may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23;

b.   A declaratory judgment that Defendant violated Arizona law and public policy, as alleged herein;

c.   Damages and restitution according to proof at trial for all unpaid minimum wage compensation unadulterated by the tip credit;

d.   Treble damages and/or statutory damages as allowable under Arizona law;

e.   Restitution of all misappropriated funds, including all tips, expenses, and wages wrongfully withheld;

f.   Reimbursement in full of all work-related expenses borne by Plaintiff and Class Members;

g.   For preliminary, permanent, and mandatory injunctive relief prohibiting Defendant, its officers, agents, and all those acting in concert with them from committing, now and in the future, those violations of law herein alleged;

h.   For the maximum allowable pre- and post-judgment interest as permitted under Arizona law;

i.   For an order awarding reasonable attorneys' fees as provided by Arizona law, Federal Rule of Civil Procedure 23(h), or any other applicable law;

j.   For all costs of suit; and

k.   For such other and further relief as the Court deems just and proper.

1 | Dated: May 4, 2022                    Respectfully submitted,

2

3                                         /s/ William M. Hogg
                                          William M. Hogg (*Pro Hac Vice*)
4                                         HODGES & FOTY, LLP
                                          4409 Montrose Blvd, Ste. 200
5                                         Houston, TX 77006
                                          Tel: (713) 523-0001; Fax: (713) 523-1116
6                                         whogg@hftrialfirm.com

7                                         Matthew S. Grimsley (*Pro Hac Vice*)
                                          Alanna Klein Fischer (*Pro Hac Vice*)
8                                         THE LAZZARO LAW FIRM, LLC
                                          The Heritage Building, Suite 250
9                                         34555 Chagrin Boulevard
                                          Moreland Hills, Ohio 44022
10                                        Tel: 216-696-5000; Fax: 216-696-7005
                                          matthew@lazzarolawfirm.com
11                                        alanna@lazzarolawfirm.com

12                                        *Counsel for Plaintiff and Class Members*

13

14                              **CERTIFICATE OF SERVICE**

15         I hereby certify that on May 4, 2022, the foregoing instrument was served upon all

16   counsel of record using the Court's electronic case filing system.

17

18                                   By: /s/ William S. Hogg
                                         William M. Hogg

19

20

21

22

23

24

25

26

27

28

-17-
PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND
*Brusalis, et al. v. OS Restaurant Services LLC*, Case No. CV-21-1980-PHX-SRB